In re O'BRIEN et al.

(Supreme Court, Appellate Division, Third Department. October 21, 1912.)

Dissenting opinion.
For majority opinion, see 137 N. Y. Supp. 718.

BETTS, J. (dissenting). The Election Law provides, as to nominations of this kind, in section 122 (Consol. Laws 1909, c. 17), as follows:

"Independent nominations of candidates for public office other than municipal offices to be voted for in a district less than the whole state, but greater than a town or ward of a city, can only be made by one thousand five hundred voters or more of the district."

The nominating certificate filed contains nine hundred signatures. Authority is claimed for the validity of this certificate, as to numbers, by the decision in People ex rel. Hotchkiss v. Smith et al., Constituting the Board of Election of Putnam County, 137 N. Y. Supp. 177, modified and affirmed on appeal to the Appellate Division as reported in 137 N. Y. Supp. 387, modified and affirmed by the Court of Appeals in 99 N. E. 568. That was a case brought on behalf of the officials in charge of the National Progressive Party for a mandamus to compel the board of election commissioners of Putnam county to disregard that provision of the Election Law which requires 1,500 signatures to make an independent county nomination or an independent nomination for member of assembly, on the ground that such provision is unconstitutional and void. The court at Special Term granted the writ so

far as requiring that county board of elections to receive an independent certificate for the nominations of county officers if it contained the signatures of 500 members of the National Progressive Party, and held that the requirement of 1,500 names was unconstitutional, but not interfering with the provision requiring 800 signers to nominate a member of assembly. It appeared that the county of Putnam casts about 3,000 votes. Both parties appealed to the Appellate Division. The court there said:

"The word 'district' is a broad one. Included therein may be the judicial districts into which the state is divided, and also the territorial divisions designated as counties. In some of the 'districts,' as, for instance, in some of the judicial districts of the state, the requirement as to number may not be unreasonable. We do not decide that question. * * * Our conclusion, therefore, is that the order should be modified by providing: (1) That defendants disregard as unconstitutional that part of section 62 of chapter 891 of the Laws of 1911 which purports to amend section 122 of the Election Law by increasing the number of signatures required for an independent nomination of candidates for public office, other than municipal offices, to be voted for in a district less than the whole state, but greater than a town or ward of a city, both as to members of assembly and as to the other candidates designated therein."

The decision holds that requiring a greater number than 500 for nominations is unconstitutional. Upon appeal to the Court of Appeals that court said:

"We are also of the opinion that in declaring section 122 of the Election Law, relating to the number of signatures required for independent nominations, unconstitutional and void, it is necessary for us to consider in that particular the constitutionality of the statutes existing prior to the amendments of 1911. The number of persons required to sign independent certificates of nomination has been increased from time to time. In so considering prior statutes we find that in the act of 1896 500 signatures to a certificate of independent nomination was required for member of assembly and a like number for county offices was required by the act of 1892. Such number, although larger than required in the other states of the Union, and larger than deemed reasonable by many persons, cannot be said by us to be prohibitory as a matter of law. The petitioners have practically assented to such number as not being unreasonable and prohibitory by asking in their petition 'that the board of election be directed to print upon the ballot for the general election to be held November 5, 1912, in the party ticket or column of the National Progressive Party, the name of any candidate for a county office or for the assembly who shall be nominated by a petition signed by 500 or more qualified voters of Putnam county.' We are of the opinion that the statutes existing prior to the amendments of 1911 should in turn be declared unconstitutional and void, so far as they require more than 500 signatures to a certificate of nomination for county officers or for a member of assembly. * * * Order of the Appellate Division modified, so as to direct that mandamus issue to the board of elections commanding it to receive certificates of nomination for public offices other than municipal offices to be voted for in a district less than the whole state, but greater than a town or ward of a city, and also for candidates for member of assembly, when signed by 500 voters qualified as prescribed by statute. In other respects, the order is affirmed, without costs to either party."

Thus it will be seen that, so far as the Court of Appeals is concerned, it has decided that 500 persons are sufficient to nominate a member of assembly and a county officer. It has not decided, or attempted to decide, that 1,500 is an unreasonable number to require

for the nomination of a Justice of the Supreme Court. This court will take judicial notice that there are upwards of 125,000 voters in the Third judicial district. If it should be decided that 1,500 is an unreasonable number, the Election Law of 1896 required 1,000 signatures for an independent nomination in a district of this kind; the Election Law of 1899 required 1,000, the Election Law of 1901 required 1,000, and the Consolidated Laws of 1909 required 1,000 persons. We have to go back to 1892 to find that 500 persons is a sufficient number to make an independent nomination in a district less than the whole state, but greater than a town or the ward of a city—20 years back. I think that, so far as the statute of 1911 is concerned, the number required, 1,500, is not an unreasonable number in any judicial district in this state to place in independent nomination a candidate for Justice of the Supreme Court. In order to save this nomination and make these petitioners sufficient numerically, this court would have to declare unconstitutional and void five Election Laws of this state, which have been acted upon without successful attack in our courts for 16 years. This I am not prepared to do. There is no waiver or consent before us that any person except those represented by Mr. Chadbourne has consented that 900 signatures were a sufficient number to this petition.

I also concur with Presiding Justice SMITH that the burden of proof is on whoever asserts that the 900 persons who signed this petition are members of the National Progressive Party, when they are openly and unanimously repudiated by the regularly constituted authorities of that party, and that in the absence of any proof that such signers are members of that party the action and wishes of the respective committees of that party should prevail. Matter of Quimby, 116 App. Div. 142, 102 N. Y. Supp. 201; Matter of Folks, 134 App. Div. 376, 119 N. Y. Supp. 71, affirmed under name of Bates, 196 N. Y. 540, 90 N. E. 1156.

I think that the order appealed from should be reversed, and the application of the appellants granted.